IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN SOLES | : | Civil Action No. 4:14-CV-01791 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| ZARTMAN CONSTRUCTION, | : | |
| INC., ET AL., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
June 24, 2016

Pending before this Court is a motion for summary judgment filed by

Defendant Zartman Construction, Inc. (hereinafter "Zartman")[1] against Plaintiff

Brian Soles (hereinafter "Mr. Soles"). The motion seeks to dismiss Mr. Soles'

complaint in its entirety, including two counts of interference and one count of

retaliation under the Family and Medical Leave Act (hereinafter "FMLA").

Though Zartman has not filed a reply brief, the time for briefing has concluded and

this matter is now ripe for disposition. In accordance with the following reasoning,

Zartman's motion for summary judgment is denied.

---

[1] John Does 1-10 are also identified as defendants in this case. The instant motion for summary judgment does not address whether it was filed on behalf of all Defendants or only Defendant Zartman; therefore, this Court will proceed on the assumption that it was filed only on behalf of Defendant Zartman.

## I. BACKGROUND

This case arises from an employment relationship between the parties. Mr. Soles was hired by Zartman in August 2008 to work as an Operator. While an employee, Mr. Soles sought treatment of atopic dermatitis, also known as severe eczema, a condition he was diagnosed with in 1982. Around August 2012, Mr. Soles' physician prescribed a treatment plan for his condition which involved undergoing ultraviolet light therapy three times per week for an undetermined amount of time, to begin in September 2012. After four years of employment, Mr. Soles was terminated on September 17, 2012. Mr. Soles alleges that he was terminated for either requesting FMLA leave, or for taking leave that should have been classified as FMLA leave, for the treatment of his eczema.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" where it "might affect the outcome of the suit under the governing law."[3] A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant

---

[2] Fed. R. Civ. P. 56(a).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."[4]

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[5] The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[6]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[7] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[8]

---

[4] *Id.*
[5] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).
[6] *Id.* at 331.
[7] *Anderson*, 477 U.S. at 250.
[8] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[9] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[10]

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.[11] Credibility determinations are the province of the factfinder, not the district court.[12] Although the Court may consider any materials in the record, it need only consider those materials cited.[13]

## III. DISCUSSION

In his complaint, Mr. Soles asserts three counts, all alleging violations of the FMLA. First, he contends that Zartman interfered with his rights under the FMLA by failing to provide him with individualized notice of his FMLA rights, an FMLA mandated eligibility notice, an FMLA mandated rights and responsibilities notice, and by failing to permit him to take FMLA-qualifying leave and failing to

---

[9] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[10] Fed. R. Civ. P. 56(e)(2).
[11] *Anderson*, 477 U.S. at 249.
[12] *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[13] Fed. R. Civ. P. 56(c)(3).

designate his absences as FMLA leave.[14] Second, Mr. Soles alleges that Zartman violated the FMLA by terminating him either to prevent him from taking FMLA-qualifying leave or by considering leave taken by Mr. Soles that should have been designated as FMLA leave in making its decision to terminate him.[15] Lastly, Mr. Soles alleges that Zartman violated the FMLA by disciplining and firing him for having taken leave that should have been treated as FMLA leave.[16]

Zartman advances three arguments in seeking dismissal of Mr. Soles' complaint in its entirety. First, Zartman contends that Mr. Soles did not qualify for leave under the FMLA because his medical condition did not qualify as a "serious health condition." Second, Zartman alleges that it was unaware of Mr. Soles' medical condition or need to take any medical-related leave. Third, Zartman argues that Mr. Soles fails to establish a prima facie case of retaliation because he fails to establish that Zartman's reasons for terminating him were pretextual.

The FMLA, 29 U.S.C. § 2601 *et al.*, provides that eligible employees are entitled to a total of twelve weeks of leave over any twelve-month period when it is taken "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[17] Pursuant to the FMLA, employers may not "interfere with, restrain, or deny the exercise of or the attempt

---

[14] ECF No. 1 ¶¶ 41-45.
[15] *Id.* at ¶¶ 48-50.
[16] *Id.* at ¶ 53.
[17] 29 U.S.C. § 2612(a)(1)(D).

to exercise" an employee's rights under the FMLA.[18] This type of claim, referred to as an interference claim, is said to "set [the floor] for employer conduct."[19] "To assert an interference claim, 'the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.'"[20] Because discrimination need not be shown to allege an inference claim, the *McDonnell-Douglas* burden-shifting analysis, discussed below, is not required.[21]

In addition to an interference claim, employees fired after making a valid request for FMLA may also bring a claim of retaliation.[22] To succeed on a retaliation claim under the FMLA, the employee must prove the following elements: 1) the employee invoked his right to FMLA-qualifying leave, 2) the employee suffered an adverse employment action, and 3) the adverse action was causally related to the employee's invocation of his FMLA rights.[23] Unlike interference claims, retaliation claims require proof of the employer's retaliatory intent; "[a]ccordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green.*"[24,25]

---

[18] 29 U.S.C. § 2615(a)(1).

[19] *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) (*citing Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir. 2005)).

[20] *Id.* (*citing Callison* 430 F.3d at 119).

[21] *Id.* (*citing Parker v. Hanhemann Univ. Hosp.,* 234 F. Supp. 2d 478, 485 (D.N.J. 2002)).

[22] *Lichtenstein v. Univ. of Pittsburgh Medical Center*, 691 F.3d 294, 301 (3d Cir. 2012) (*citing Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009)).

[23] *Lichtenstein,* 691 F.3d at 302 (*citing Erdman,* 582 F.3d at 508–09).

[24] 411 U.S. 792 (1973).

[25] *Lichtenstein,* 691 F.3d at 302.

Under the *McDonnell-Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of retaliation, pointing to evidence in the record sufficient to create a genuine factual dispute as to each of the three retaliation claim elements.[26] If he succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.[27] Once articulated, the plaintiff must then "point to some evidence, direct or circumstantial, from which a factfinder could reasonably ... disbelieve [the defendant's] articulated legitimate reasons."[28]

As stated above, Zartman asserts three arguments in support of its motion for summary judgment. Its first two arguments bear on both Mr. Soles' interference and retaliation claims; its third argument bears on Mr. Soles' retaliation claim. The Court will address each argument in turn.

## A. Whether Mr. Soles' medical condition qualifies as a "serious health condition" under the FMLA is a genuine issue of material fact precluding summary judgment.

Zartman alleges that Mr. Soles' medical condition does not qualify as a "serious health condition" under the FMLA because Mr. Soles never missed work for more than three consecutive days related to his medical condition. Additionally, in his deposition, Mr. Soles testifies that his medical condition does not prevent him from performing any of his job duties and does not interfere with any normal

---

[26] *Id.*
[27] *Id.* (*quoting McDonnell Douglas,* 411 U.S. at 802).
[28] *Id.* (*quoting Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)).

daily activities.[29] Mr. Soles argues that evidence in the record clearly establishes that his medical condition is one that qualifies for FMLA.

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[30] A serious health condition involving continuing treatment by a health care provider includes conditions requiring multiple treatments when there is a "period of absence to receive multiple treatments . . . [for] a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment . . ."[31]

Various courts have visited the question of whether eczema qualifies as a "serious health condition" for the purposes of the FMLA. In *Beal v. Rubbermaid Commercial Products Inc.*,[32] the United States District Court for the Southern District of Iowa held that a plaintiff's eczema did not qualify for the FMLA where her eczema had only caused incapacitation for one day and caused her to leave

---

[29] During Mr. Soles' deposition, he was asked whether his symptoms prevent him from performing his job duties, to which he replied "not really." He was subsequently asked if there were "any normal daily activities that [he is] unable to perform because of this health condition," to which Mr. Soles replied "no." ECF No. 17-1 at 5. In looking at these answers in the context of the questioning, however, it seems likely that Mr. Soles responded to these questions generally and not specific to a severe flare-up, which, according to the remainder of his testimony and medical records, seems to indicate otherwise.

[30] 29 U.S.C. § 2611(11).

[31] 29 C.F.R. § 825.115(e)(2).

[32] 972 F. Supp. 1216 (S.D. Iowa 1997).

work only sporadically.[33] The plaintiff had further never been hospitalized for the condition and had only visited a health care provider three times in five years for her eczema.[34] Moreover, the plaintiff rarely, if ever, used prescription medication for treatment of her eczema.[35]

On the other hand, the United States District Court for the District of Oregon held that a plaintiff who had repeatedly missed work due to his eczema raised a genuine issue of material fact when he was denied leave under the FMLA.[36] Similarly, the United States Court of Appeals for the Sixth Circuit granted summary judgment for a plaintiff on his FMLA interference claim when the underlying medical condition was severe eczema.[37]

In the matter at hand, the record reflects that there is a genuine issue of material fact as to whether Mr. Soles' eczema qualifies as a "serious medical condition" under the FMLA. Medical records submitted by Mr. Soles indicate that Mr. Soles was seen by (or corresponded with) his physician for the treatment of his eczema on, at least, July 20, 2010, August 20, 2010, August 24, 2010, October 26, 2010, December 27, 2010, February 10, 2011, March 31, 2011, June 17, 2011, August 24, 2011, June 25, 2012, August 31, 2012, and September 11, 2012.[38] The

---

[33] *Id.* at 1224.
[34] *Id.*
[35] *Id.*
[36] *Farrell v. Tri-County Metropolitan Transp. Dist. of Or.*, 2005 WL 1307695, *8-9 (D. Or. May 31, 2005).
[37] *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488 (6th Cir. 2008).
[38] ECF No. 19-3.

medical records diagnose Mr. Soles with "severe atopic dermatitis" or "severe eczematous dermatitis." Mr. Soles' physician further described his condition as "most severe," and indicated that patches of eczema were found on "the trunk and extremities" and on his "arms, neck, and legs."[39]

The medical records also corroborate Mr. Soles' deposition statements that he communicated to his physicians that he had been diagnosed in 1982, had been prescribed Prednisone every month for multiple years, and had attempted to treat his eczema with various treatments, including UV light therapy, various topical steroids, and oral prescription medications.[40] The records also indicate that Mr. Soles reported to his physicians that during a flare-up his skin breaks open and bleeds, and that he has missed work due to his eczema.[41]

In his deposition, Mr. Soles also testified that he was medically discharged from the military due to his eczema.[42] He indicated that his medical condition affected his ability to serve in the military because his skin was "leaking fluid 24 hours a day" on his arms and legs.[43] He explained that the fluid consisted of blood and pus from infections.[44] He further testified that he has been hospitalized due to his condition "on and off."[45]

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] ECF No. 17-1 at 8.
[43] *Id.*
[44] *Id.*
[45] *Id.*

In his statement of facts, Mr. Soles alleges that his flare-ups have been so severe as to affect his ability to sleep, walk, and perform fine motor skills tasks.[46] He also alleges that he suffered a flare-up in 1992 so severe that he was admitted to a hospital for one or two nights[47] and a subsequent flare-up in either 1993 or 1994 that resulted in an emergency room visit and the prescription of a powerful sedative which resulted in uninterrupted sleep for four to five straight days and nights.[48] Zartman disputes these allegations, further supporting this Court's conclusion that whether Mr. Soles' eczema qualifies as a "serious medical condition" under the FMLA is an issue of fact for a jury to decide.

## B. Whether Zartman was put on notice of Mr. Soles' need for FMLA leave is a genuine issue of material fact precluding summary judgment.

To request FMLA leave, an employee must "provide at least verbal notice sufficient to make the employer aware that [he] needs FMLA-qualifying leave . . . [and] need not expressly assert rights under the FMLA or even mention the FMLA . . . ."[49] Communicating an "intention to take such leave in the future" can constitute requisite notice under the FMLA if "the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to

---

[46] ECF No. 19-2 at ¶ 14.
[47] *Id.* at ¶ 15.
[48] *Id.* at ¶ 19.
[49] 29 C.F.R. § 825.302(c).

perform his job."[50] There are no "magic words" that are required to provide notice.[51] The employee must only provide enough information to the employer "to show that he *may* need FMLA leave."[52]

The issue of whether Zartman had notice of Mr. Soles' need for FMLA leave is aggressively disputed by the parties. In his deposition, Mr. Soles testifies that the same day that he saw his physician and had the first UV light therapy treatment, he notified his supervisor, Harold Reich, of his need to take time off from work three days a week for his medical treatment. He indicates that he provided Mr. Reich with the medical records from the visit on August 31, 2012. The medical documents from that visit indicate that they would "start narrow band light therapy (at 500 mJ) today with plan to increase by 100 mJ per treatment for long term treatment" and that the "[p]atient receives treatment three times weekly."[53]

In his deposition, Mr. Reich testified that throughout Mr. Soles' employment, he left work for medical reasons and would indicate that he had to go to the doctor because his arm itched and irritated him.[54] He also stated that, on one occasion, Mr. Soles showed him his arm and "the skin was all like broke open" and

---

[50] *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (*citing Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001)).
[51] *Id.*
[52] *Id.* (*citing Woods v. Daimler Chrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005) (emphasis added)).
[53] ECF No. 19-3 at 36, 41.
[54] See ECF No. 19-11 at 2 ("Q. Do you remember what he took off for? A. I can remember this. He would come to me – and it happened more than once – and say, I have to get to the doctor, this is driving me crazy (Indicating). Q. You just rubbed your arm. A. He rubbed his arm like it itched. And that's all he would say.")

bleeding.[55] Mr. Reich indicated, on that occasion, Mr. Soles requested to take time off to go to the hospital.[56]

On the other hand, Mr. Reich stated that Mr. Soles never showed him any medical documentation regarding his eczema.[57] During his deposition, Mr. Reich reviewed Mr. Soles' August 31, 2012 medical documentation and testified that he had never seen and was never given those documents.[58] He further indicated that Mr. Soles "never told [him] anything about his treatment" or that he would need to get treatment for part of the day three days a week.[59]

As such, the testimony reveals that the issue of whether Mr. Soles communicated the requisite notice as required under the FMLA is a genuine issue of material fact for the fact-finder.

**C. Whether Zartman's nondiscriminatory reason for terminating Mr. Soles was pretextual is a genuine issue of material fact precluding summary judgment.**

Lastly, Zartman argues that the record is devoid of any evidence of retaliatory intent and, therefore, Mr. Soles' FMLA retaliation claim must be dismissed. As stated above, for a retaliation claim to survive, a plaintiff must first point to evidence in the record supporting each of the three elements of a

---

[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 3.
[59] *Id.* at 2.

retaliation claim.[60] The defendant must then provide a non-discriminatory reason for the adverse employment action, which the plaintiff then argues is pretextual, supporting his claim with evidence from the record.[61]

Here, Mr. Soles argues that he invoked his right to FMLA leave (which this Court determined is an issue of material fact), that he was terminated (which is undisputed), and that the termination was in retaliation for either his request for FMLA leave or for taking FMLA-qualifying leave. Zartman's reason for terminating Mr. Soles, however, is unclear from the record. Zartman's answer to Mr. Soles' complaint indicates that Mr. Soles was terminated for a legitimate, non-discriminatory reason, but does not provide the reason.[62] Zartman's brief in support of its motion for summary judgment suggests that Mr. Soles was terminated after receiving verbal and written warnings and disciplinary action "throughout his employment with Defendant."[63] Mr. Soles argues, however, that this explanation for termination is not reflected by the evidence.

Mr. Reich, Mr. Soles' direct supervisor, testified as to Zartman's disciplinary policy.[64] He indicated that the policy is progressive and there are typically three stages of discipline regarding one type of disciplinary issue. First there is a warning; second, a probationary period where conduct is monitored; and

---

[60] *Lichtenstein*, 691 F.3d at 302 (*citing Erdman,* 582 F.3d at 508–09).
[61] *Lichtenstein*, 691 F.3d at 302.
[62] ECF No. 5 at ¶¶ 64, 65.
[63] ECF No. 18 at 6.
[64] ECF No. 19-9 at 5.

third, suspension without pay.[65] These three stages are all typically exhausted prior to termination.[66]

Mr. Reich also testified as to Mr. Soles' specific circumstances. Mr. Soles was given a written warning on March 18, 2011 for arriving at work late.[67] Mr. Reich then testified that he was given a "written write-up" on August 20, 2012 for an incident occurring on July 19, 2012 in which he was "hauling five loads of material exceeding GVW weight by 2,000 to 3,000 pounds. Hauling one load exceeding 17,000 pounds."[68] Mr. Reich testified, however, that the "action taken" on August 20, 2012 as stated on the form was a "warning" with the following consequence noted should the incident happen again: "Employee responsible for future incidents. Suspension or possible termination."[69] He further testified that he did not consider the March 18, 2011 warning in issuing the August 20, 2012 "warning" because the two incidents were considered separate, as they were for separate disciplinary issues.[70]

Mr. Reich further testified that he was not involved in the decision to terminate Mr. Soles.[71] In response to whether he knew the reason for Mr. Soles' termination, Mr. Reich stated that there was another incident regarding a "certain

---

[65] *Id.*
[66] *Id.*
[67] ECF No. 19-11 at 4.
[68] *Id.*
[69] *Id.*
[70] *Id.* at 5.
[71] *Id.*

job that took awfully long to do."[72] When he questioned Mr. Soles about the

incident, Mr. Soles failed to provide an explanation as to why the project took so

long to complete.[73] Mr. Reich admitted, however, that he could not recall what Mr.

Soles specifically stated when he was questioned.[74] Mr. Reich then discussed the

issue with Dean Paul, another Zartman supervisor, but also could not recall the

conversation with Mr. Paul or whether there was a decision made to take any sort

of action.[75] Mr. Reich also indicated that he did not complete a written warning or

write-up for this incident[76] and was unable to recall when the incident took place.[77]

Mr. Soles contends that Zartman's alleged reason for termination is

pretextual because the two separate written warnings he received over a four-year

employment period did not merit termination under Zartman's own disciplinary

policy. He further alleges that in response to his inquiry to Mr. Reich at the time of

his termination as to why he was being terminated, Mr. Reich stated that he did not

have a reason for the termination.[78] Mr. Soles also points to a Request for

Separation and Wage Information submitted to the Pennsylvania Department of

---

[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] ECF No. 1 at ¶ 28.

Labor and Industry and completed by Zartman which indicates that the reason for separation was "lack of work."[79]

Accordingly, there is clearly a genuine dispute of material fact regarding both the reason for Mr. Soles' termination and whether the reason was a pretext to conduct which violated Mr. Soles' rights under the FMLA.[80]

## IV. CONCLUSION

Consequently, and consistent with the foregoing reasoning, Zartman's motion for summary judgment is denied.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[79] ECF No. 19-15.
[80] Mr. Soles, in his counterstatement to Zartman's statement of material facts, also correctly points out that Zartman fails to assert that its reason for firing Mr. Soles is undisputed, itself admitting that a genuine issue of material fact exists.